CAUSE NO. 12-14-00205-CR, 12-14-00206-CR, 12-14-00207-CR

IN THE

THE 12th DISTRICT COURT OF APPEALS

FOR THE

STATE OF TEXAS

RECEIVED IN
12th COURT OF APPEALS
TYLER, TEXAS
1/6/2015 3:57:44 PM
CATHY S. LUSK
Clerk

FILED
1/6/2015
Twelfth Court of Appeals
Cathy Lusk
Clerk

CHARLES EDWARD LUSK,

APPELLANT

V.

THE STATE OF TEXAS,

APPELLEE

STATE'S REPLY TO APPELLANT'S BRIEF

D. MATT BINGHAM
Criminal District Attorney
Smith County, Texas

MICHAEL J. WEST
Assistant Criminal District Attorney
Bar I.D. No. 21203300
Smith County Courthouse
100 N. Broadway
Tyler, Texas 75702
ph: (903) 590-1720
fax: (903) 590-1719

ORAL ARGUMENT NOT REQUESTED

ACCEPTED
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/6/2015 3:57:44 PM
CATHY LUSK
CLERK

12-14-00205-CR

# TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

REPLY TO APPELLANT'S POINTS OF ERROR . . . . . . . . . . . . . . . . . . . . . . 2

COUNTERPOINT ONE: The trial court acted within its discretion when it denied Appellant's motion to dismiss based upon entrapment where Appellant presented absolutely no evidence that he was entrapped. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATUTE/RULES**

**PAGE**

TEX. PENAL CODE ANN. (Vernon 2014)

§ 8.06 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATE CASES**

**PAGE**

*Brumbalow v. State,* 933 S.W.2d 298
(Tex.App. - Waco 1996, *pet. ref'd*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Busby v. State,* 2003 Tex.App. LEXIS 10581
(Tex.App. [Houston - 1st Dist.] Dec. 18 2003, *no pet.*)
(not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Carrillo v. State,* 98 S.W.3d 789
(Tex.App. - Amarillo 2003, *pet. ref'd*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cook v. State,* 646 S.W.2d 952
(Tex.Crim.App. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Elizondo v. State,* 2006 Tex.App. LEXIS 5376
(Tex.App. - Amarillo June 21, 2006, *pet. ref'd* )
(not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*England v. State,* 887 S.W.2d 902
(Tex.Crim.App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Garcia v. State,* 1991 Tex.App. LEXIS 694
(Tex.App. [Houston - 1st Dist.] Mar. 21 1991, *no pet.*)
(not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hernandez v. State,* 161 S.W.3d 491
(Tex.Crim.App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

STATE CASES (cont.)                                                                   PAGE

*Johnson v. State*, 23 S.W.3d 1
(Tex.Crim.App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

CAUSE NO. 12-14-00205-CR, 12-14-00206-CR, 12-14-00207-CR

IN THE

THE 12th DISTRICT COURT OF APPEALS

FOR THE

STATE OF TEXAS

CHARLES EDWARD LUSK,

APPELLANT

V.

THE STATE OF TEXAS,

APPELLEE

**STATE'S REPLY TO APPELLANT'S BRIEF**

**TO THE HONORABLE COURT OF APPEALS:**

Comes now the State of Texas, by and through the undersigned Assistant Criminal District Attorney, and respectfully urges this Court to overrule Appellant's alleged error and affirm the judgment of the trial court in the above-numbered causes.

**STATEMENT OF THE CASE**

Appellant, Charles Edward Lusk, was indicted in Cause Nos. 241-0126-14,

241-0127-14, and 241-0128-14, filed in the 241st District Court of Smith County, Texas, with the offenses of Delivery of a Controlled Substance in a Drug Free Zone. (CR: 1).[1] On June 16, 2014, Appellant was fully admonished as required by law and persisted in entering an open plea in each case. (RR 2: 10-37). In a separate sentencing hearing, the trial court assessed sentences of twenty years confinement in Cause No. 241-0126-14, and fifty years confinement in Cause Nos. 241-0127-14, and 241-0128-14, in the Texas Department of Criminal Justice - Institutional Division. (RR 4: 5-9).

Appellant gave timely notice of appeal, counsel was appointed, and a brief filed with the Court. The State's brief will be timely filed if the Court grants the attached motion for extension of time.

## STATEMENT OF FACTS

Appellant has accurately stated the essential nature of the evidence presented in this case. In the interest of judicial economy any other facts not mentioned herein that may be relevant to disposition of Appellant's point of error will be discussed in the State's argument in response to those points.

---

[1] Appellant has appealed under three cause numbers and his complaint here regarding "entrapment" was argued at trial to apply to all three cases since the police made repeated drug buys from Appellant over the course of a few months.

2

**COUNTERPOINT ONE: The trial court acted within its discretion when it denied Appellant's motion to dismiss based upon entrapment where Appellant presented absolutely no evidence that he was entrapped.**

**A.    Summary of Argument**

Appellant complains under his sole point of error that the trial court abused its discretion in denying his motion to dismiss theses cases based upon his claim of entrapment. (Appellant's brief at 2-9). However, the testimony at the hearing on Appellant's motion to dismiss clearly established that Appellant was eager and willing to sell crack cocaine to undercover officers on more than one occasion. And, where the record also includes that Appellant's attorney did not believe that Appellant had a valid entrapment defense, the trial court was well within its discretion in denying the motion. (RR 1: 7, 10).

**B.    Standard of Review**

The abuse of discretion standard governs the review of a trial court's pre-trial ruling on a motion to dismiss because the defendant was entrapped. *Cook v. State*, 646 S.W.2d 952, 952 (Tex.Crim.App. 1983). Unless the record clearly reveals that a different result is appropriate, this Court must defer to the factfinder's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, which is primarily a

3

determination to be made by observation of the witnesses giving the testimony. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex.Crim.App. 2000). When the standard of review is abuse of discretion, the record must simply contain some evidence to support the decision made by the trial court. *Brumbalow v. State*, 933 S.W.2d 298, 300 (Tex.App. - Waco 1996, *pet. ref'd*). When conflicting evidence exists as to entrapment, the trial court does not abuse its discretion in overruling a motion to dismiss. *Cook*, 646 S.W.2d at 952.

The test for entrapment has a subjective prong and an objective prong. *England v. State*, 887 S.W.2d 902, 913 n.10 (Tex.Crim.App. 1994). The first prong is subjective: was the accused subjectively induced by law enforcement authorities to engage in the illegal conduct. *Id.* The second prong is objective: was the conduct of the authorities that induced the accused to engage in illegal conduct such that an ordinary person would have been induced to engage in the illegal conduct. *Id.*

**C.    Application to the Facts of the Case**

Under his sole point of error, Appellant complains that the trial court abused its discretion in denying his motion to dismiss based upon entrapment. There is no merit to this argument because the record of this case establishes conclusively that police did nothing other than merely ask Appellant to help them purchase crack cocaine. A request to which Appellant almost gleefully complied. Two witnesses

were called to testify at the hearing held on Appellant's motion to dismiss. The record shows that the relevant portions of that testimony consisted of the following:

1.  The first witness called was Appellant. He initially took the stand to testify in an *ex parte* manner. (RR 1: 5-6). While questioning Appellant concerning the filing of the motion to dismiss based upon entrapment, Appellant's trial attorney explained more than once that he filed the motion to dismiss solely at Appellant's request and in spite of the fact that he did not "believe there's a legal or factual basis" for that motion. (RR 1: 7). The attorney further had Appellant acknowledge that it had been explained to him that his alleged entrapment claim was not supported by the facts of the case or the law:

MR. DAVIDSON: Okay. Now, getting to this entrapment hearing, we - again, after - and in this ex parte, where the State is not present and this is just between the Court and us in an ex parte hearing, I've gone over with you and explained, as best I can, that while I don't believe that there's a factual or legal basis for doing an entrapment, you still wanted me to file the entrapment, and I did file the entrapment, and you want to go forward with the hearing today; is that correct?

THE DEFENDANT: Yes, sir.

(RR 1: 9-10).

After the *ex parte* hearing, Appellant remained on the stand and testified concerning the facts of the case. He told the trial court that he was first approached by police in a SUV and acting in an undercover capacity in the parking lot of a Motel

5

6 in Tyler, Texas. (RR 1: 19-20). The driver of the vehicle asked Appellant whether he knew "where anything was at," and the conversation continued with Appellant asking the undercover officer if he was with the police. (RR 1: 23-24). Appellant was asked and informed the officers that he was leaving the motel to walk to a Valero gas station in order to "play the games" there. (RR 1: 24). Appellant testified that the officers said that they wanted to meet him later and that he "told them if they come down there [to the Valero station], I don't mind talking to them." (RR 1: 24).

The undercover police later pulled up next to Appellant as he was walking to the Valero. They offered to drive him to the station and Appellant got into the SUV. (RR 1: 26). However, the group never went to the station and Appellant had "made up [his] mind at that time that [he] would do something for them." (RR 1: 26). Appellant claimed that he decided to help the police buy crack cocaine because one of the officers apparently referred to him by his nickname "Diamond," which caused Appellant to believe that the officers "knew me or knew somebody that knew me." (RR 1: 27). One officer complained that they had been getting bad drugs lately and Appellant replied "Well, maybe you're not messing with the right people." (RR 1: 28). The officers told Appellant they wanted "something hard" for $100, which he already understood to mean crack cocaine. (RR 1: 29). Appellant then testified that the police had "convinced me that he half knew me, I made a call. And I made that call, and they

6

told me to come on by. So I told them, "Come, on, I'm going to take you by. I ain't going to take you in there, because they don't know you." (RR 1:30). Appellant then took the officers to a drug dealer's house and purchased $100 worth of crack cocaine for them because "they told [him] that they wanted [him] to get drugs for them . . ." and that he would not have help them purchase the drugs if they had not asked him to. (RR 1:31).

Appellant told the trial court that after the first drug buy the same undercover officers continued to call him and ask him to buy more crack cocaine. He assisted them at least two other times, and explained that:

I might have been coerced, but I want the Court to understand that, hey, that's - this is my - I grew up like like this. That's part of my life. So people know - I can't say that they made me do something I didn't know. I did know. I know everybody in the neighborhood, just like I know guys - I know them. So if I know them, I know what they do. If I take him and put him with him, okay, I'm wrong for doing that. I shouldn't have never done that. I know better - old enough to know better, but I done it anyway. But I didn't do it on the intent like I'm a drug dealer or I'm going to get - no, I didn't get all that. I didn't get nothing. All I got was $10, and I used that to play the machines that I play, and that was all I done.

(RR 1: 37-38).

On cross-examination, Appellant explained that he understood that when officers first approached him and asked "where's it at" that they were looking to buy drugs. (RR 1: 44). He knew by the term "hard" that the officers were wanting to buy

7

crack cocaine. (RR 1: 45). Appellant denied that he showed the officers a crack pipe at the first encounter to prove to police that he himself was not a police officer. (RR 1: 46). However, he did admit to showing them a crack pipe at one of the subsequent drug buys. (RR 1: 47). When asked if police threatened him to make him find cocaine to buy, Appellant told the trial court:

No, they didn't threaten me or nothing. We talked on a level like he may have known me or knew of me. There wasn't no weapon. He didn't threaten me, force me, none of that. He just talked to me and gave me the impression that he knew me. This is what consummated me to make a deal with him, do what I did for him, because I wasn't going to do it at first. I told him no. I said it several times. I didn't say no once, I said it three times. I told him no twice in the parking lot and no again when I got in the car.

(RR 1: 50).

Appellant also testified that when he took police to buy the crack cocaine, one of the officers noted that he had bought drugs at a particular house and Appellant told him; "No, don't be going over there, man. You'll get in trouble. . . They'll jump on you, take your money. Don't go over there." (RR 1: 54). Once they arrived at the drug dealer's house, Appellant said that he took the $100 into the house by himself, bought crack cocaine with it, and returned to the officer's vehicle with the drugs. (RR 1: 57). In return, he was given $10.00 for assisting in the buy. (RR 1: 57).

For the second drug buy, Appellant met officers on the street and he arranged to have his dealer meet them there. (RR 1: 60). Appellant was again given $100 and

by himself approached the dealer's vehicle to buy the cocaine which he then gave to the officers. (RR 1: 61-62). Appellant was then handed $10.00 for his part in the transaction. (RR 1: 63). Appellant denied that he ever smoked crack cocaine in the presence of the officers during any of the drug buys. (RR 1: 63).

About a month after the second buy, police called Appellant and he agreed to help them buy $200.00 worth of crack cocaine. (RR 1: 64). Appellant mentioned that he brought along a pellet-gun at this buy because he didn't want the police thinking they could take advantage of him. (RR 1: 65). This time the dealer did not meet with Appellant, but instead sent a girl to make the transaction at the Motel 6. (RR 1: 67-68). Appellant again was given the buy money and on his own made the purchase before returning to the police. (RR 1: 68-69). It was at this time that Appellant was arrested by other officers conducting a fake traffic stop. (RR 1: 69). The trial court then heard the following exchange:

Q.     I believe you testified a few minutes ago with Mr. Davidson that you can't say they made you do something that you didn't know you were doing?

A.     That's true. I knew what I was doing, but I did it under the pretense of something. I had a reason why I done it. But they didn't - no, they didn't make me do something that I didn't know, I wasn't conscious of. I was very conscious of what I was doing.

Q.     So - and you said they didn't coerce you?

A.   No, they didn't force me or pull no guns or nothing on me, they just talked me into it.

Q.   They just asked you to do it and you did it?

A.   Yeah. They didn't just ask, they kind of talked me into it. Wasn't just, Hey, would you do this and I said yes. No, didn't do that. It went on like a course of kept asking me, asking me, and we talked. "Man, come on." It wasn't - it's not a plead, it's just like, "Man, do this for me. Man, quit playing around. Do this for me." You know what I'm saying?

Q.   So they pressured --

A.   So I said, "I'll do it this one time."

Q.   So they pressured you?

A.   I don't use the word "pressured," it's just talked me into it.

Q.   They talked you into it? I asked that --

A.   Yeah, you asked it. You talk people into things. You keep talking to them, they'll finally say, okay, I'll do this. It was a talking thing. It wasn't like, I'm threatening you to do this, I'm going to make you. No, it wasn't like that. It was he talked to me, talked to me, and I finally agreed.

Q.   Okay. So he talked you into it by asking several times?

A.   Yes, sir.

(RR 1: 67-68).

On redirect, Appellant testified that the $10.00 dollars he received for helping police with the drug buys was a "big deal" to him because he used the money to "play

my games I play at the gas station" for "about 10 minutes, 15 minutes" and because he could get "100 spins" for $10.00 on the games. (RR 1: 73). He was "persuaded" by the $10.00 he received for his help in purchasing the crack cocaine. (RR 1: 75). Appellant claimed that he did not seek the police out, but that he helped them as a favor. He explained:

That's what I'm saying. I would have never seeked them. I wasn't looking to do that. I know a lot of people that use drugs. I use drugs myself. I try to steer clear of it now, but I'm saying to you that, hey, I know people. By me knowing people, I stay kind of away from it. I don't be in that neighborhood, But when people seeks me out that I know, okay, I've got friends I do know, I did a favor. That was a favor thing. You know, I knew this guy T, and I know that he - I know he like hundred-dollar bills.

(RR 1: 76).

Appellant's admission that he bought the crack for the undercover officers as a "favor" clearly constitutes sufficient evidence to support the trial court's denial of his motion. Nevertheless, the testimony continued as Appellant explained that he was not told by police that he would be given anything in return for his help - until he asked one officer "what was I getting out of that?" (RR 1: 78). It was then that the police told him they would not give him any cocaine, but would give him $10.00. (RR 1: 78-79).

2.    The other witness to testify at the entrapment hearing was Officer Lukas Neubauer. (RR 1: 81). He was one of the undercover narcotics officers involved in

11

the drug buys with Appellant. (RR 1: 82). He testified that he first became involved in these cases when police stopped Appellant in the parking lot of the Motel 6, a known drug dealing location, and asked if he could help him buy cocaine. (RR 1: 83). He told Appellant that they were trying to buy drugs and were looking for some "hard" which Appellant knew meant they wanted crack cocaine. (RR 1: 85). Officer Neubauer testified that it was during this very first conversation that Appellant displayed a crack pipe to prove to the narcotics officers that he was not a police officer. (RR 1: 85). Further, Appellant told them that "he had just finished smoking crack, didn't have any with him right that minute, and that he could get some more for us though." (RR 1: 85). The police did not offer Appellant anything for his cooperation but it was understood that the usual course would be that a person in Appellant's position would ask for a "few dollars" or a "pinch" off of the crack rock they helped purchase. (RR 1: 86).

The officers left the Motel 6 to get their recording equipment and drug money and then found Appellant on his way to the Valero gas station. (RR 1: 87). Appellant immediately got into the vehicle and began giving them directions to his dealer's residence. (RR 1: 87). Appellant used Officer Neubauer's phone to call his dealer while they were headed to the buy location. (RR 1: 87). He also told the officers that "he had $60, that he was going to buy some crack for himself, and wanted to know

12

how much we wanted." (RR 1:88). At this point Officer Neubauer explained how the transaction took place:

It actually took a second try. He left the vehicle the first time after he directed us to the location. He was gone for a few minutes, he came back, after I had given him the money, and he said that they - let me double-check here - he said that they didn't have it yet and asked us to drive around the block again. At that point he still had the money. And he at that point said that he had brought a sample bag that he wanted us to smoke with him. He produced a small off-white, rock-like substance that I believed to be crack cocaine and offered it to us to smoke in the vehicle, which of course we couldn't do, and we told him that we weren't going to smoke it there in the car with him, we were going to take ours and go back to the hotel and smoke it there. He said that was fine, but he was going to go ahead and hit it up anyway. So he lit up the crack pipe in the car there with us while we were driving around the block. And then, after that, he returned to where I'm assuming was the same house. He had us park in a different spot, but we went in the same general direction, and then came back with roughly $100 worth of crack cocaine for us.

(RR 1:89).

According to Officer Neubauer, Appellant was "definitely agreeable" to help with the first drug buy and that "he seemed excited about the prospect that we could do this on multiple occasions" and that it "[d]idn't take any kind of cajoling or convincing." (RR 1:90). Further, contrary to Appellant's claim that police contacted him before every drug buy, Officer Neubauer stated that Appellant called him "repeatedly over the course of the next couple of weeks, very frequently" after the first buy to see if they needed more cocaine. (RR 1:91). Officer Neubauer testified

13

further that they conducted two more cocaine purchases through Appellant before he was arrested. (RR 1: 91). At the close of this testimony the trial court overruled Appellant's motion to dismiss the instant cases. (RR 1: 97).

When a defendant raises the defense of entrapment, he must present a *prima facie* case: (1) that he engaged in the conduct charged; (2) because he was induced to do so by a law enforcement agent; (3) who used persuasion or other means; and (4) that those means were likely to cause persons to commit the offense. *Hernandez v. State*, 161 S.W.3d 491, 497 (Tex.Crim.App. 2005). In addition, the Texas Penal Code provides:

### § 8.06. Entrapment

(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. *Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.* (emphasis supplied).

TEX. PENAL CODE ANN. § 8.06 (a) (Vernon 2014).

Here, the evidence shows that Appellant willingly engaged in three separate drug transactions essentially because police asked him to. That is to say, they merely provided "an opportunity to commit an offense" to Appellant. *Id.* And, not only was Appellant predisposed to buy crack cocaine as a self-admitted drug user, he actually had several opportunities to run off with the drug buy money and/or refuse to make

14

any purchase for the police. The record further includes testimony that Appellant admitted that: he previously bought crack cocaine; knew a drug dealer that he had made buys from in the past; had shown officers that he possessed a crack pipe; and actually smoked crack in their presence. (RR 1:30-31, 47, 76, 85, 88-89). Appellant also "seemed excited about the prospect that we could do this on multiple occasions." (RR 1:91). By contrast, the sole improper "persuasion" he offered at the hearing was that he first asked for and received the paltry sum of $10.00, which he intended to use to play some sort of game for "about 10 minutes, 15 minutes." (RR 1:73).

The law provides that this Court must defer to the trial court's determination concerning what weight to give contradictory testimonial evidence where the court's decision often turns on an evaluation of credibility and demeanor, which is primarily a determination to be made by observing the witnesses giving the testimony. *Johnson*, 23 S.W.3d at 8.

In this case, The evidence at the pre-trial hearing supported the trial court's determination and the trial court did not abuse its discretion in finding that appellant was not entrapped and in refusing to dismiss the case. *Cook*, 646 S.W.2d at 952; *see also Garcia v. State*, 1991 Tex.App. LEXIS 694 (Tex.App. [Houston - 1st Dist.] Mar. 21 1991, *no pet.*) (not designated for publication) (where agents merely gave defendant the opportunity to buy drugs, there was no entrapment); *Elizondo v. State*,

15

2006 Tex.App. LEXIS 5376 (Tex.App. - Amarillo June 21, 2006, *pet. ref'd*) (not designated for publication) (no error in not giving charge on entrapment where the record revealed no evidence that the police conduct was such that an ordinarily law-abiding person would have been induced to commit the crime); *Busby v. State*, 2003 Tex.App. LEXIS 10581 (Tex.App. [Houston - 1st Dist.] Dec. 18 2003, *no pet.*) (not designated for publication) (defendant failed to establish entrapment where she testified that there was no pressure from the undercover officers and she helped the officers obtain drugs just after meeting them).[2] For these reasons, there is no merit to Appellant's point of error and it should be overruled.

---

[2] The State offers unpublished opinions to point out the reasoning of the court when faced with similar facts "rather than simply arguing without reference, that same reasoning." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex.App. - Amarillo 2003, *pet. ref'd*).

16

## PRAYER

**WHEREFORE**, for the reasons stated herein, the State of Texas prays that the Court of Appeals overrule Appellant's Point of Error and affirm the judgment of the 7th District Court, Smith County, Texas, in this case as modified.

Respectfully submitted,

D. MATT BINGHAM
Smith County Criminal District Attorney

Michael J. West
Asst. Criminal District Attorney
Bar I.D. No. 21203300
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)
mwest@smith-county.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4 (i)(3), the undersigned attorney certifies that the word count for this document is 3,741 words as calculated by Corel WordPerfect X6.

Michael J. West

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of January 2015, the following have been completed:

(1) The original legible copy of the State's Response to Appellant's Brief in the above numbered cause has been sent via electronic filing to the Clerk of the Court of Twelfth Court of Appeals.

(2) A legible copy of the State's Response to Appellant's Brief in the above numbered cause has been sent by U.S. Mail to:

Mr. Austin Jackson
Attorney at Law
112 E. Line, Ste. 310
Tyler, Texas 75702

Michael J. West
Asst. Criminal District Attorney
Bar I.D. No. 21203300
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)

18